IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARYL JOHNSON, | No. 4:23-CV-01315 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| J. FIENI, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

OCTOBER 24, 2023

Plaintiff Daryl Johnson is currently incarcerated at the State Correctional Institution in Huntingdon, Pennsylvania (SCI Huntingdon). He filed the instant *pro se* Section 1983[1] action claiming that officials at SCI Huntingdon violated his constitutional rights, primarily with regard to COVID-19 vaccination. The Court will dismiss many of Johnson's claims pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted, but will allow him to proceed on his retaliation claim.

I.     BACKGROUND

Johnson alleges that, on August 4, 2021, a memorandum from SCI Huntingdon superintendent John Rivello was issued to inmates regarding COVID-

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

19 vaccination.[2] According to that memo, unvaccinated inmates would be moved to a single housing unit on "CA" block but inmates who were vaccinated could remain in their current housing assignment.[3] Johnson alleges that the memo also indicated that "the Moderna vaccine could be available by the end of the week."[4]

That evening, Johnson and a group of other inmates were called to the front of the housing block to either receive the COVID-19 vaccination or be moved to the "CA housing unit" with the other unvaccinated inmates.[5] Johnson avers that the only vaccine available at this time was the Janssen COVID-19 vaccine, and he had heard "via Fireside Chat" that the on-site vaccines expired on August 7, 2021.[6]

Johnson claims that, when his turn came, he told nurse John Doe #1 (who was administering the injections) and Health Care Administrator Paula Price that he did not want to take the Janssen vaccine but would instead take the Moderna vaccine when it became available, as described in Rivello's memo. Price allegedly reviewed the memo and responded, "We're not doing that. It's either the [Janssen] vaccine or C-block."[7] Johnson asserts that he expressed concerns about the handling of the on-site vaccines and their approaching expiration date, but Price told him, "Oh, they extended [the expiration date]. The CDC does it all the time."[8]

---

[2] Doc. 1 at 5.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.* Johnson appears to contend that this statement by Price was a lie. *See id.* at 10.

2

She also informed him that he could wait for the Moderna vaccine but would have to move to CA unit in the meantime and would lose his contact visits for 60 days.[9] Johnson alleges that John Doe #1 then stated, "Look, it's either this or C-block. Those are the only options we're offering. Are you taking it or not?"[10]

Johnson admits that he reluctantly agreed to take the Janssen vaccine.[11] Before receiving the injection, he was asked to sign the electronic voluntary consent form, which he eventually agreed to do, but maintained that his acceptance was "definitely not voluntary" because he was being threatened with losing his contact-visitation privileges.[12] Around that time, Johnson alleges that corrections officer J. Fieni began yelling at him to "[s]ign the vaccine [consent form] or go pack."[13] Johnson claims that he signed the consent form and received the Janssen vaccine "[u]nder duress," in particular because being sent to CA unit "would almost guarantee" that he contracted COVID-19, which was "potentially a death sentence."[14]

After the injection, Johnson alleges that the following interaction with Fieni occurred. Johnson asserts that he was told to wait in the crowded post-injection observation area, and at some point Fieni yelled at the gathered inmates to "move

---

[9] *Id.* at 5-6.
[10] *Id.* at 6.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.* at 6-7.

down on the bench" because he did not want "15 guys standing around," to which Johnson responded that there was "no room."[15] Fieni replied that he "wasn't talking to" Johnson, and then a few seconds later drew his OC spray and threatened to spray Johnson and told him to "take [his] ass out on center."[16] Johnson asserts that he complied and "went to sit on center."[17] Apparently, Fieni subsequently issued a misconduct to Johnson, for which he was sanctioned with 30 days in the Restricted Housing Unit (RHU).[18] Johnson maintains that the misconduct report contained "false accounts" by Fieni and was intended to retaliate against Johnson for "exercising a right and protected liberty interest in making an informed decision to take or refuse treatment."[19]

Johnson names four defendants: Rivello, Fieni, Price, and Doe.[20] He claims that his First, Eighth, and Fourteenth Amendment rights were violated by being forced to receive the Janssen vaccine and by being mistreated and retaliated against by Fieni.[21] He claims that he suffers from "emotional distress" and "on-going anxiety" due to the allegedly forced injection and the falsified misconduct.[22]

---

[15]   *Id.* at 7.
[16]   *Id.*
[17]   *Id.*  It is unclear what "on center" means.
[18]   *See id.* at 6, 7-8.
[19]   *Id.* at 7, 10.
[20]   *See id.* at 2-3.
[21]   *See id.* at 10.
[22]   *See id.* at 10-11.

## II.  STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[23]  One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[24]  This language closely tracks Federal Rule of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[25]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[26]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[27]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to

---

[23]  *See* 28 U.S.C. § 1915A(a).
[24]  *Id.* § 1915A(b)(1).
[25]  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).
[26]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[27]  *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[28]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[29] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[30] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[31] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[32] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[33]

Because Johnson proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[34] This is particularly true when the *pro se* litigant, like Johnson, is incarcerated.[35]

---

[28] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[29] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[30] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[31] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[32] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[33] *Iqbal*, 556 U.S. at 681.
[34] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).
[35] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III.    DISCUSSION

Before addressing the sufficiency of Johnson's complaint, the Court must identify the claimed constitutional violations.[36] The gravamen of Johnson's complaint is that several Defendants violated his constitutional rights by coercing him to receive a vaccine against his will. This type of allegation plainly implicates the substantive due process clause of the Fourteenth Amendment.[37] He also appears to contend that his First Amendment rights were violated by Fieni's alleged retaliatory actions.[38] In addition, Johnson cursorily claims that his Eighth Amendment rights were infringed by Fieni's conduct. Finally, Johnson asserts that Rivello's "directions and practices" at SCI Huntingdon "constituted a state-created danger."[39]

Most of Johnson's constitutional tort claims are riddled with fatal deficiencies and require dismissal with prejudice. The Court will discuss his claims in turn.

---

[36] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("The first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed."); *Graham v. Connor*, 490 U.S. 386, 394 (1989) (explaining that analysis of a Section 1983 claim requires "identifying the specific constitutional right allegedly infringed by the challenged" conduct).

[37] *See White v. Napoleon*, 897 F.2d 103, 111 (3d Cir. 1990) ("The Due Process clause of the Fourteenth Amendment substantively protects certain fundamental rights. Among these are the right to be free from unjustified intrusions into the body . . . [and] the related right to refuse unwanted medical treatment . . . ." (citing, respectively, *Ingraham v. Wright*, 430 U.S. 651, 673 (1977); *Rennie v. Klein*, 653 F.2d 836, 844 (3d Cir. 1981))).

[38] *See* Doc. 1 at 10 (citing First Amendment).

[39] Doc. 1 at 10.

### A. Fourteenth Amendment Substantive Due Process

The primary claim in Johnson's complaint is that he was allegedly forced to take the Janssen COVID-19 vaccine against his will.  Johnson's allegations, however, do not—and cannot—establish a substantive due process violation.

"The Due Process clause of the Fourteenth Amendment substantively protects certain fundamental rights.  Among these are the right to be free from unjustified intrusions into the body . . . [and] the related right to refuse unwanted medical treatment . . . ."[40]  In a substantive due process challenge to governmental conduct, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."[41]  Whether governmental action shocks the conscience is "a matter of law for the courts to decide."[42]

In the instant case, Johnson alleges that he received the Janssen COVID-19 vaccine under "duress."  According to Johnson, the prison's policy—promulgated by Rivello—was that inmates were required to choose whether to receive the Janssen vaccine or be moved to a different housing unit with other unvaccinated inmates and subjected to the loss of certain privileges, including contact visitation.

---

[40] *See White v. Napoleon*, 897 F.2d 103, 111 (3d Cir. 1990) (citing, respectively, *Ingraham v. Wright*, 430 U.S. 651, 673 (1977); *Rennie v. Klein*, 653 F.2d 836, 844 (3d Cir. 1981)).
[41] *Benn v. Univ. Health Sys., Inc.*, 371 F.3d 165, 174 (3d Cir. 2004) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).
[42] *Id.* (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)).

In other words, Johnson maintains that he was coerced into getting the Janssen vaccine by being forced to choose between (a) vaccination with the Janssen product, or (b) being transferred to a different unit that housed unvaccinated prisoners and losing his contact-visitation privileges.

Simply put, neither this policy, nor any of Price's or Doe's alleged actions on August 4, 2021, establish that Johnson was forced to receive a vaccination against his will. His allegations clearly show that prisoners were given a choice regarding whether to be vaccinated with the Janssen vaccine or be moved to a unit with other unvaccinated prisoners and lose contact-visitation privileges. Johnson does not contend, for example, that the policy called for physical restraint and injection against an inmate's will, or even for misconducts being issued for refusing to be vaccinated. The Court additionally notes that, at that time under Department of Corrections policy, "[v]accination among the inmate population is voluntary," and inmates were incentivized to get vaccinated and boosted by being offered financial compensation, further demonstrating that COVID-19 vaccination was not forced or mandatory in state prisons.[43]

Defendants' purported action of attempting to vaccinate prisoners against the COVID-19 virus and separating vaccinated and unvaccinated inmates in no way

---

43   *See Fennell v. Wetzel*, No. 4:22-cv-00880, 2023 WL 1997116, at *5 (M.D. Pa. Feb. 14, 2023) (quoting COMMW. OF PA., PA. DEP'T OF CORR., COVID-19, https://www.cor.pa.gov/Pages/COVID-19.aspx (last visited Feb. 9, 2023)).

represents "conscience-shocking" conduct. It is, in fact, an eminently reasonable course of action to protect against the spread of the virus, undertaken at a time when COVID-19 and its variants were spreading rapidly.[44]

Nor do Johnson's allegations about the day of his vaccination implicate a substantive due process violation. Johnson admits that he agreed to receive the unexpired Janssen vaccination, signed the electronic consent form, and was vaccinated. He was also permitted to express his concerns and received responses from healthcare personnel about issues like vaccine expiration dates. Additionally, he was given the option of waiting to receive the Moderna COVID-19 vaccine (although he would have to quarantine with other unvaccinated prisoners until that time).

While Johnson faced the alternative of being moved to a different housing unit with other unvaccinated inmates, this choice does not establish that he was forced to receive an injection against his will or that his substantive due process rights were violated. Johnson's allegations simply do not describe governmental action that could be found to be "conscience shocking" or an "unjustified intrusion" into his body. Thus, Johnson cannot plausibly state a Fourteenth Amendment substantive due process claim against any Defendant.

---

[44] *See Walker v. Sorber*, No. 21-CV-3477, 2022 WL 4586137, at *5, 7 (E.D. Pa. Sept. 29, 2022) ("Due to the necessarily close and continued contact that prisoners experience, SCI-Phoenix had every reason to attempt to prevent a large-scale outbreak by segregating vaccinated from unvaccinated prisoners[.]"); *Fennell*, No. 4:22-CV-00880, 2023 WL 1997116, at *5.

## B. Eighth Amendment Claim

Johnson also appears to assert an Eighth Amendment claim against Fieni, although this claim is conclusory and undeveloped. Nevertheless, if Johnson is asserting an Eighth Amendment claim based on the alleged conduct of Fieni as described in the complaint, he has not stated such a claim.

Johnson's allegations of yelling, verbal threats, and profanity by Fieni do not and cannot state a plausible Eighth Amendment violation. In general, conduct like verbal harassment, threats, taunting, and profanity, without any injury, is insufficient to implicate a constitutional infringement under either the Eighth or Fourteenth Amendment.[45] While the Court in no way condones Fieni's alleged unprofessional conduct (*e.g.*, yelling at Johnson and threatening to use OC spray when unnecessary), such conduct has repeatedly been held not to amount to a constitutional violation. Accordingly, the Court must dismiss the Eighth Amendment claim against Fieni under Section 1915A(b)(1) for failure to state a claim for relief as well.

---

[45] *See Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993) (explaining that "verbal harassment does not give rise to a constitutional violation enforceable under § 1983"); *see also Murray v. Woodburn*, 809 F. Supp. 383, 384 (E.D. Pa. 1993) (collecting cases); *Manning v. Flock*, No. 1:11-CV-0293, 2012 WL 1078227, at *12 (M.D. Pa. Mar. 30, 2012) (collecting cases); *Graham v. Main*, Civil Action No. 10-5027(SRC), 2011 WL 2412998, at *24-25 (D.N.J. June 9, 2011) ("Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner."); *Mohamed v. Aviles*, Civil No. 06-4794 (FSH), 2007 WL 923506, at *5 (D.N.J. Mar. 26, 2007) (collecting cases).

To the extent that Johnson contends that Fieni's alleged retaliatory action (issuing a false misconduct) violated the Eighth Amendment, such a claim is already covered by a Section 1983 retaliation claim and is better considered under that cause of action.[46] The Court thus turns to Johnson's retaliation claim.

### C. "First Amendment" Retaliation

Johnson appears to raise a retaliation claim under the First Amendment. To state a *prima facie* First Amendment retaliation claim, a prisoner must allege that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the inmate's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[47]

Johnson alleges that Fieni retaliated against him by filing a false misconduct report, resulting in 30-days' detention in the RHU. Johnson maintains that he was retaliated against "for exercising a right and protected liberty interest in making an informed decision to take or refuse treatment."[48]

---

[46] It also would not independently satisfy the type of conditions required for an Eighth Amendment claim in the prison setting.
[47] *Wisniewski*, 857 F.3d at 156 (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).
[48] Doc. 1 at 10.

It is well settled that a charged misconduct constitutes "adverse action" by a prison official for a retaliation claim.[49]  The issue with Johnson's claim is that the "constitutionally protected conduct" he alleges does not implicate the First Amendment.  For example, he does not assert that he was retaliated against for exercising his freedom of speech, expression, petition, religion, or association.  Rather, Johnson is claiming that he was retaliated against for exercising his right under the Fourteenth Amendment to make an informed decision regarding medical treatment.

This type of retaliation claim appears to fall under the rubric established in *White v. Napoleon*.[50]  In that case, the United States Court of Appeals for the Third Circuit explained that "[r]etaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under [S]ection 1983."[51]  The Third Circuit found that the prisoner-plaintiff had stated a retaliation claim when he alleged that a prison doctor "filed disciplinary charges against him in retaliation for exercising his right to refuse treatment."[52]  Here, although Johnson has not plausibly stated a substantive due process claim, he has asserted a viable retaliation claim by alleging that he was seeking to make an informed decision regarding the Janssen vaccine and Fieni retaliated against him

---

[49] *See Watsom v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016).
[50] 897 F.2d 103 (3d Cir. 1990).
[51] *Id.* at 111-12.
[52] *Id.* at 111.

for this constitutionally protected conduct. Johnson's invocation of the First Amendment in his complaint, therefore, appears to simply be a pleading error.

### D. State-Created Danger

Johnson's final claim asserts that Rivello's "directions and practices" with regard to COVID-19 constitute "a state-created danger."[53] To properly plead a claim for state-created danger, a plaintiff must allege four elements: "(1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct; (2) the state-actor acted in willful disregard for the plaintiff's safety; (3) there was some relationship between the state and the plaintiff; and (4) the state-actor used his authority to create an opportunity for danger that otherwise would not have existed."[54] With regard to the second element, the plaintiff must show that the state acted "with a degree of culpability that shocks the conscience,"[55] requiring proof that the state actor disregarded a known or obvious consequence of his action."[56]

Johnson's claim against Rivello fails at the first and second elements. He has not alleged that he has been physically harmed by Rivello's vaccination policy, let alone in a "foreseeable" and "fairly direct" manner. Although Johnson alleges that receiving the Janssen vaccine caused him emotional distress and anxiety, the

---

[53] Doc. 1 at 10.
[54] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[55] *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006).
[56] *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).

Court is unaware of any plausible state-created danger case asserting only emotional damages (rather than serious physical injuries).[57] Moreover, such emotional injuries cannot be said to be foreseeable and fairly direct harm resulting from the vaccination and quarantine of unvaccinated inmates to prevent the spread of COVID-19.[58] Additionally, as noted above, in no way can Rivello's actions with regard to COVID-19 prevention be said to "shock the conscience." Rather, the separation of vaccinated from unvaccinated inmates is a completely reasonable course of action in the prison setting during a pandemic.

### E.    Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[59] Here, leave to amend the dismissed claims will be denied because amendment would be futile. Johnson's allegations do not, and cannot, implicate a substantive due process violation, an Eighth Amendment claim, or state-created danger. Johnson's allegations with respect to these claims are legally, rather than factually, deficient, and thus amendment

---

[57] *See, e.g.*, *Maxwell ex rel. Maxwell v. Sch. Dist. of Phila.*, 53 F. Supp. 2d 787 (E.D. Pa. 1999) (violence, sexual harassment, and rape); *Schieber v. City of Philadelphia*, 320 F.3d 409, 416 (3d Cir. 2003) (rape and murder); *Brown v. Dep't of Health Med. Servs. Training Inst.*, 318 F.3d 473, 478 (3d Cir. 2003) (death); *see also Carey v. City of Wilkes-Barre*, 410 F. App'x 479, 483 (3d Cir. 2011) (nonprecedential) (finding that "the emotional distress alleged by [plaintiff] is not a cognizable harm" for a state-created danger claim).

[58] *See Carey*, 410 F. App'x at 483 ("The anxiety [plaintiff] claims she suffered after the closing of the fire station does not rise to the level of foreseeable and fairly direct harm.").

[59] *Grayson*, 293 F.3d at 114.

15

would be futile. This case, therefore, will proceed on Johnson's retaliation claim against Fieni only.

## IV. CONCLUSION

Based on the foregoing, the Court will dismiss in part Johnson's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. This case will proceed only as to Johnson's Section 1983 retaliation claim against defendant J. Fieni. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge